UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MARIO HERNANDEZ,          *
                               *
        Plaintiff     *
                               *
                               *
    v.               * CIVIL NO. SA-10-CA-0949-XR
                               *
BANDERA COUNTY and SHERIFF  *
WELDON TUCKER in his Official *
Capacity,             *
                               *
        Defendants.   *
                               *

<u>ORDER</u>

Before the court are the following motions: plaintiff, Mario Hernandez's Motion to Quash Subpoena Duces Tecum (docket no. 24) and Second Motion to Quash and for Protective Order (docket nos. 25 and 29), to which defendant Bandera County has responded (docket no. 27); defendant, Bandera County's Motion to Exclude (docket no. 26), to which plaintiff has responded (docket no. 28); and Bandera County's Motion to Strike (docket no. 30), to which plaintiff has responded (docket no. 31).  Upon consideration of the motions, responses and applicable law, plaintiff's Motion to Quash Subpoena Duces Tecum is **DENIED** (docket no. 24); plaintiff's Second Motion to Quash and for Protective Order is **GRANTED in part** and **DENIED in part** (docket no. 25); Bandera County's Motion to Exclude is **DENIED** (docket no. 26); and Bandera County's Motion to Strike is **DENIED AS MOOT** (docket no. 30).

1

## BACKGROUND

Plaintiff Hernandez brings this action against defendants, Bandera County and Sheriff Weldon Tucker, in his official capacity, for discrimination and retaliation for protected activity pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and § 1981.  Hernandez was employed by the Bandera County Sheriff's Office ("BCSO") as a deputy beginning in 2007.  Plaintiff requested to be transferred to the day shift and was assigned Sgt. Jerry Johnson as his new supervisor.  Plaintiff, who claims he was the only Hispanic on Sgt. Johnson's shift, alleges that following his reassignment, he was treated differently, was not included in discussions, was not provided valuable information when he arrived on a scene, and was frequently not provided back-up.  Further, plaintiff complains of the following: that his requests for time off were usually denied while requests by Caucasian officers were frequently approved; he was subjected to racist remarks about Hispanics by members of Sgt. Johnson's shift; Sgt. Johnson allegedly announced during a meeting that he wanted to move "that stupid Mexican" to Animal Control so he would quit, allegedly referring to plaintiff; plaintiff was disciplined for a clerical error in a report although he allegedly had not been properly trained to prepare the report and other deputies who committed similar errors were not disciplined; plaintiff was called out for having an affair while other Caucasian deputies were known to be engaging in affairs but received no warnings; plaintiff was

2

transferred to the Support division as an Animal Control officer without any explanation; plaintiff's reports were often returned for minor errors while other officers performing Animal Control duties produced reports with major errors yet their reports were not returned for corrections; in December of 2008, Sgt. Sharp was assigned to the Support division as plaintiff's superior and in January of 2009, without any explanation, both Sgt. Sharp and Deputy Hernandez were transferred to the Patrol Division; plaintiff was again subjected to racist remarks while on Sgt. Johnson's shift; plaintiff complained of these remarks to Chief Deputy Don Berger and was told plaintiff would be transferred to Sgt. Sharp's crew; plaintiff was disciplined in March of 2009 for allegedly preparing a defective affidavit for a witness although other deputies who committed similar infractions were not disciplined; in April of 2009, plaintiff was asked by Sgt. Sharp to conduct a brief surveillance on Sheriff Tucker who was being investigated regarding misuse of government property; plaintiff conducted this surveillance but was seen by Sheriff Tucker; the following day, Chief Berger called Deputy Hernandez into his officer for a meeting with Tucker and others and fired plaintiff without explanation; and plaintiff, unlike other Caucasian officers, was not offered the possibility of resignation.

Based on these allegations, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on April 23, 2009, and appealed his termination to the Bandera Commissioner's

Court in May of 2009.  County Judge Evans allegedly refused to hear from plaintiff during the hearing and the Commissioners approved his termination.  Within weeks, plaintiff states that the Bandera County Sheriff's Department hired two new deputies who were both Caucasian.  Plaintiff further alleges that the BCSO then submitted false documents to the Texas Commission on Law Enforcement Officers Standards ("TCLEOSE") regarding plaintiff's fitness to be a police officer.  Sometime in 2009, plaintiff began working for the Bandera City Police Department ("BCPD") as a Reserve Officer on a volunteer basis with the intention of eventually securing a paid position; however, plaintiff alleges that in July of 2009, County Judge Evans reportedly spoke with plaintiff's supervisors and advised them not to hire plaintiff.

Plaintiff filed a charge of discrimination and later the instant suit, alleging that defendants discriminated against him because of his race in violation of Title VII.  Additionally, plaintiff complains that he was subjected to retaliation and reprisal for exercising his right to oppose discriminatory practices that are unlawful.

## DISCUSSION

### I. Plaintiff's Motion to Quash

Defendant Bandera County issued a Notice of Intention to Take Deposition by Written Questions to plaintiff's former employer, the BCPD.  Defendant also seeks to subpoena "any and all records, including but not limited to, personnel, training, disciplinary,

and termination records pertaining to Mario Hernandez." Plaintiff moves to quash this notice, arguing that the subpoena is over broad and is designed to "harass plaintiff in his subsequent employment and to hinder his chances for re-employment with the City of Bandera."[1]  (Docket no. 24).

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense...." **FED.R.CIV.P. 26(b)(1).** "Courts construe discovery rules liberally to serve the purposes of discovery: providing the parties with information essential to the proper litigation of all relevant facts, eliminating surprise, and promoting settlement." ***Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.***, 218 F.R.D. 125, 132 (E.D.Tx. 2003). Upon motion, a court shall issue a protective order with regard to a request for relevant discovery only upon the movant's showing of "good cause" and which "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". **FED.R.CIV.P. 26(c);** ***United States v. Garrett***, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978). A showing of "good cause" requires only that a sound basis or legitimate need to take judicial action exists. ***Landry v. Airline Pilots Ass'n Int'l, AFL-CIO***, 901 F.2d 404, 435-436 (5th Cir. 1990).

Here, plaintiff worked for the BCPD *following* his separation from the BCSO but resigned in September of 2011 "as part of a

---

[1]Plaintiff states that he has since reapplied for a position with the City of Bandera Police Department.

settlement agreement." Although plaintiff complains that the information sought from the BCPD is not relevant to his claims, plaintiff's complaint alleges that after he began working at the BCPD as a Reserve Officer on a volunteer basis in 2009, "[Bandera] County Judge Evans spoke with Plaintiff's supervisors at the Bandera Police Department" and "indicated to Plaintiff's supervisors that they should not hire Plaintiff." (Docket no. 1, Plaintiff's Original Complaint, pg. 3, ¶ 10). Plaintiff has sued the defendants, in part, for denying him career opportunities and subjecting him to retaliation and reprisal for opposing unlawful discriminatory practices. (Id., pg. 4). Thus, information pertaining to plaintiff's employment records with the BCPD, including personnel, training, disciplinary, and termination records, would appear to be relevant in defense of plaintiff's claims. **FED.R.CIV.P. 26(b)(1)**. Accordingly, plaintiff's motion to quash and for protective order is **DENIED**. (Docket no. 24).

## II. *Plaintiff's Second Motion to Quash and for Protective Order*

Defendant Bandera County also issued additional subpoenas, seeking records from agencies that employed plaintiff *prior* to plaintiff's employment with the BCSO. In particular, defendant seeks records from the Poteet Police Department and the Jourdanton Police Department. The subpoenas seek the following:

> any and all employment file records, personnel records, application for employment, records relating to days absent and/or time lost, correspondence and/or memoranda, records relating to reviews and/or promotions, worker's compensation records and/or claims, insurance records

and/or claims, pre-employment physical(s), post-employment physical(s), post-offer physical(s), medical records, employment history, letters of recommendation, including but not limited to any and all personnel records contained in your office(s) pertaining to the employment of Mario Hernandez....

Defendants maintains these records are relevant because although plaintiff has alleged that the legitimate reasons given by defendant for his termination are pretextual, and that he was actually terminated because of his race, "[t]he Defendant reasonably believes that the Plaintiff has left prior or subsequent employment in law enforcement under similar circumstances, *i.e.* he has either been engaged in conduct that is unbecoming of a peace officer and has resigned under duress, or has been terminated for good and sufficient reason, but Plaintiff and [sic] has subsequently claimed race, ethnic or national origin discrimination." As such, defendant argues, plaintiff's "behavior in other employment situations that have resulted in termination are relevant to show a pattern or practice of the Plaintiff, and is therefore relevant to the present litigation."

In support of its position, defendant submits two letters written by plaintiff wherein plaintiff offers his own explanations for leaving his positions with both the Jourdanton and Poteet Police Departments. (Docket no. 27, exhs. 1 & 2). Plaintiff's letter regarding his resignation with the Jourdanton Police Department states that Hernandez "resign[ed] [his] position for purely personal reason, [sic], abet [sic] related to the work

environment at the Jourdanton Police Department." (Docket no. 27, exh. 2). The letter goes on to state that "[d]uring [plaintiff's] tenure with the JPD, the work environment became increasingly stressful due to political in-house fighting between some of the city council members and the Chief of Police. Attached to this letter are newspaper accounts of the tribulations of the city and its council."[2] While the Jourdanton letter itself makes no reference to plaintiff being terminated because of his race, ethnic or national origin, both newspaper accounts referred to state that plaintiff filed a complaint with the EEOC and a lawsuit against Bandera County, claiming racial discrimination. (Id., exh. 3). Further, plaintiff is quoted in one of the newspaper accounts as stating that "[i]nsubordination is just an excuse, a reason to terminate me." (Id.) The article also refers to plaintiff as "the complainant of an investigation by the Equal Employment Opportunity Commission," who "was forced to endure a rigorous interview process" "before being hired as a patrol officer when no other officer was required to do so, and was later passed over for a promotion." (Id.). The second newspaper account refers to an incident that occurred when plaintiff was employed by the BCPD but contains similar statements, such as "Hernandez has claimed no wrongdoing, stating he has been singled out and targeted by the chief. He has filed a complaint of racial discrimination with the

---

[2]It is unclear from the letter to whom the letter is directed or when it was written; therefore, the Court refers to this letter as the "Jourdanton letter" for clarity.

Equal Employment Opportunity Commission (EEOC). The investigation is pending." Plaintiff's reference to these newspaper accounts in the Jourdanton letter lends an inference that plaintiff was terminated by the Jourdanton Police Department because of his race, ethnic or national origin discrimination. Plaintiff's letter regarding his resignation with the Poteet Police Department, on the other hand, makes no reference to the newspaper accounts and does not otherwise state that plaintiff is claiming he was terminated because of his race, ethnic or national origin discrimination.

While the court agrees that employment discrimination plaintiffs do not, as a matter of course, open up their entire work history for discovery, by referring to newspaper accounts that allege plaintiff was terminated because of his race in a letter wherein plaintiff is purportedly explaining his reasons for separation from employment, plaintiff has "opened up" his employment history with the Jourdanton Police Department. **FED.R.CIV.P. 26(b)(1)** ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense....").

Nevertheless, plaintiff argues that the subpoenas are over broad and "designed solely to harass plaintiff in his subsequent employment and to hinder his chances for re-employment with the City of Bandera." The Court agrees that the subpoenas are over broad. While plaintiff's disciplinary records, employment reviews and recommendations, and any documents referring to plaintiff's

separation with the Jourdanton Police Department and the reasons for this separation would appear to be relevant, here defendant also seeks financial records, worker's compensation claims, leave issues, insurance records and physical exams, none of which would appear to be reasonably calculated to lead to the discovery of admissible evidence. **FED.R.CIV.P. 26(b)(1).**

Accordingly, plaintiff's second motion to quash and for protective order is **DENIED** with respect to plaintiff's disciplinary records, employment reviews and recommendations, and any documents referring to plaintiff's separation with the Jourdanton Police Department and the reasons for this separation, and otherwise **GRANTED.** As plaintiff did not make similar representations with respect to his separation from the Poteet Police Department and defendant has not otherwise established that discovery pertaining to plaintiff's records with the Poteet Police Department are reasonably calculated to lead to the discovery of admissible evidence, plaintiff's second motion to quash and for protective order is **GRANTED** as to defendant's Notice of Deposition by Written Questions for the Poteet Police Department. Accordingly, plaintiff's Second Motion to Quash and Motion for Protective Order is **GRANTED in part and DENIED in part** in accordance with this order. (Docket no. 25).

### III. Bandera County's Motion to Exclude

Defendant, Bandera County, next moves to exclude extraneous evidence from a separate trial, and seeks a hearing on the matter.

10

(Docket no. 26).  Defendant states that plaintiff has given notice of his intention to obtain the depositions of Weldon Tucker, Allen Tucker, Don Berger and Richard Evens in Cause No. SA-09-CA-676, styled, **Scott A. Sharp v. Bandera County, Texas**, and objects to any attempt by the plaintiff "to use, introduce, refer to, or otherwise avail himself of evidence gathered in the Sharp litigation in the present proceedings.  Defendant argues that the information should be excluded because the facts of the Sharp litigation are distinct and separate from the present litigation.  Further, defendant maintains that the requested discovery is of such marginal relevance the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.  **Sec. & Exch. Comm'n v. Brady**, 238 F.R.D. 429, 435 (N.D. Tex. 2006).

Plaintiff maintains that the information sought is relevant because plaintiff and Sharp worked together for the BCSO from 2007-2009, and both plaintiffs were demoted at about the same time. Further, plaintiff alleges that he was supervised by Sharp when many of the events in the present case allegedly took place and that Sharp "filed his own EEOC Charge against the Bandera County Sheriff alleging he was fired in part due to opposing the discrimination lodged against Mario Hernandez."  Moreover, plaintiff states that two documents filed in the Sharp lawsuit refer to plaintiff, including an allegation that the Sheriff's Office "changed the date of Officer Hernandez' discharge on reporting document to TCLEOSE, which was not sent to Officer

11

Hernandez within 7 days of his actual discharge; and was not sent to TCLEOSE within the required time frame from discharge." Plaintiff states he has requested the transcripts of the depositions given by former Sheriff Weldon Tucker, former Lt. Allen Tucker, former Chief Deputy Don Berger and County Judge Richard Evans, along with any exhibits that "directly" refer to Mario Hernandez.

Although defendant argues that "[t]he probative value of any evidence from the Sharp litigation is generally out-weighed by the potential threat of prejudice," defendant presents no evidence in support thereof.  Moreover, as defendant has not asserted any claim of privilege and the information sought appears to be reasonably calculated to lead to the discovery of admissible evidence, it is discoverable and should be produced.  **Fed.R.Civ.P.  26(b)(1).** Defendant's arguments regarding admissibility of the documents in question have no bearing on the documents' relevance, and may be reurged at a latter date.  Defendant's motion to exclude is **DENIED.** (Docket no. 26).

### IV. Bandera County's Motion to Strike

On January 9, 2012, defendant served plaintiff with its Notices of Intention to Take Deposition by Written Questions to the Jourdanton Police Department and the Poteet Police Department.  On January 19, 2012, plaintiff forwarded a letter and cross-questions to U.S. Legal Support, Inc., and copied the Jourdanton and Poteet Police Departments but failed to copy or notice defendant with the

cross-questions.  Defendant now moves to strike the cross-questions for failure to comply with Fed.R.Civ.P. 31(a)(5), and further, seeks a hearing.  (Docket no. 30).  **See** **FED.R.CIV.P. 31(a)(5)**(requiring that "[a]ny questions to the deponent from other parties must be served on all parties" including cross-questions "within 14 days after being served with the notice and direct questions").  In response, plaintiff states he has withdrawn his cross-questions and reurges his Motion to Quash and for Protective Order.  Accordingly, defendant's motion is **DENIED AS MOOT.**  (Docket no. 30).  Further, having previously addressed plaintiff's motion to quash and for protective order, the Court sees no reason to revisit this matter.

It appears that the parties have failed to comply with the Federal Rules of Civil Procedure and the Local Court Rules in presenting these motions to the Court.  All parties are admonished they are required by this Court's Local Rules and the Federal Rules of Civil Procedure to cooperate with one another in good faith and to confer on all matters before a motion is filed.  **See FED. R. CIV. P. 26(c), 37(a)(1); WESTERN DISTRICT OF TX. LOCAL RULE CV-7(h).**  Any matters that can be resolved will save this Court's time and will save the litigants' valuable time and money.  All parties are, therefore, admonished that this Court will strictly adhere to the requirement that they confer in good faith prior to filing any motion with this Court; as evidence of same, the parties must attach a certificate of conference to all motions attesting the

parties have so conferred in good faith.

<u>**CONCLUSION**</u>

For the forgoing reasons, plaintiff's Motion to Quash Subpoena Duces Tecum is **DENIED** (docket no. 24); plaintiff's Second Motion to Quash and for Protective Order is **GRANTED in part** and **DENIED in part** (docket no. 25); Bandera County's Motion to Exclude is **DENIED** (docket no. 26); and Bandera County's Motion to Strike and Request for Hearing is **DENIED AS MOOT** (docket no. 30).

It is so **ORDERED.**

**SIGNED** February 29, 2012.

_____

JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE